[No. 1911.  Decided January 9, 1896.]

W. C. KINCAID, *Appellant*, v. F. E. THOMPSON *et al.*,
*Respondents.*

TRUST EX MALEFICIO — PAYMENTS — ORDER OF APPLICATION.

The fact that a bank has a chattel mortgage upon a hop crop will
not raise a presumption that a subsequent voluntary lease of the
farm to the vice president of the bank was in trust for the purpose
of having the proceeds of the crop applied to the extinguishment of
the debt due the bank and the balance turned over to the lessor, in
the absence of any showing of fraud or duress in procuring the
lease.

The order in which the law requires payment to be applied on different debts may be changed by agreement of the parties.

Appeal from Superior Court, Pierce County.—Hon. W. H. Pritchard, Judge.    Affirmed.

*John P. Judson*, for appellant.

*Remington & Reynolds*, for respondents.

The opinion of the court was delivered by

Hoyt, C. J.—On December 27, 1892, plaintiff and his wife borrowed of the Bank of Sumner $1,789.14 and executed to F. E. Thompson, as trustee for said bank, their promissory note, secured by their chattel mortgage upon certain articles of personal property and upon the hop crop to be grown upon their farm in the year 1893. The money so borrowed and secured was due on the 1st day of April, 1893. At this time the plaintiff was not in a situation to pay it and entered into negotiations with the bank by which it was sought to secure an extension of the time of payment. The result of these negotiations was that an agreement was entered into by which the farm was to be leased to E. C. Meade, who at the time was vice president of the bank, that he was to pay for the use of it one-fourth of the hop crop, that three-fourths of the crop, which was to be the lessee's share, was to be released from the force of said mortgage, and it was to be continued in force upon the lessor's share only. In pursuance of this agreement a written lease was entered into between plaintiff and his wife, of the first part, and E. C. Meade, of the second part, conditioned as provided for in said agreement. Thereunder, the hop crop was cultivated by said E. C. Meade, and with the consent of all the parties interested the entire crop was sold for something over $7,000.00,

one-fourth of which was by said Meade turned over to
the bank to be by it applied upon the mortgage in
question, or otherwise, as might be agreed upon.   At
the time the chattel mortgage in question was taken and
also at the time the lease was made to said Meade, the
farm was encumbered by several real estate mortgages,
upon some of which the interest would become due
before the hop crop could be harvested, and it was
feared that unless the interest was paid, the holders of
such mortgages might interfere with the removal of
the crop, hence it was agreed between the plaintiff
and the bank that the bank should advance sufficient
money to pay the interest upon said real estate mort-
gages as it became due, and should have the right to
repay itself out of the first moneys which came into
its hands from the proceeds of the hop crop.

At about the time the crop was ready for market it was
ascertained, that one Ezra Meeker had a mortgage
thereon, the existence of which was likely to interfere
with its sale.   To prevent this, it was agreed that the
bank should advance money enough to secure the
release of this mortgage, and repay itself out of the first
moneys which came into its hands.   The bank, out of
the proceeds of plaintiff's one-fourth interest in the
crop, repaid itself the amounts advanced to secure the
release of the Meeker mortgage and to pay interest
on the real estate mortgages, and applied the remain-
der upon the note and mortgage in question.

After this had been done, there was still due thereon
something over $400.   This not having been paid,
proceedings were commenced to foreclose the mortgage
by notice and sale by the sheriff under the statute;
whereupon plaintiff instituted this proceeding to en-
join such sale and to have the cause removed to the
superior court.   It was so removed and by agreement

was treated as an action by the bank to foreclose the mortgage, and the principal questions which the court was called upon to decide grew out of the claims on . the part of the plaintiff and the defendants respectively as to the relation which the bank sustained to the lease made by plaintiff and his wife to E. C. Meade. The claim of plaintiff was, that in taking said lease, Meade acted as trustee for the bank, and that under the circumstances surrounding its execution, the bank must be held to have taken it in the name of said Meade as its trustee for the sole purpose of securing the payment of the note and chattel mortgage. While it is claimed on the part of the bank that it had no connection whatever with the lease, that its only interest in having it made was that the hop crop which was covered by the mortgage might be cultivated and prepared for market so that its lien thereon might not become valueless. If Meade was acting as trustee for the bank, and the lease was for its sole benefit, the claim of plaintiff as to its liability to account for the entire crop as his trustee would depend upon whether or not the lease was taken solely to secure the payment of the note and mortgage. Upon that question it is claimed by the plaintiff that such advantage was taken of him by the bank, that though in the lease it was agreed that the lessee should receive certain benefits not connected with the payment of the note and mortgage, such agreement could not be enforced; that, notwithstanding the conditions of the lease the bank should have been treated solely as the trustee of the plaintiff in raising and marketing the hop crop, and should have been required to account to him for all the money received over and above that necessarily expended in the production and marketing of the crop.

If the evidence showed that the execution of the lease had been procured by fraud or duress such might have been the result, but it did not; on the contrary, it fully appears that both plaintiff and his wife signed the lease freely and voluntarily. There is no proof tending to show that the plaintiff was in any manner deceived or oppressed, except that the bank insisted upon its right to collect the note and mortgage when due. To so insist has never been considered even morally wrong. And as a matter of law it has never been claimed that a creditor has not the right to insist upon payment, even although the debtor is not in a condition to pay.

It is not necessary to further discuss questions which might have arisen, if the lease had been to Meade for the benefit of the bank. The trial court made a finding of fact to the effect that the lease was to Meade and the bank had no interest whatever therein, and if this finding is supported by the proofs it will be unnecessary to determine any of the questions growing out of the alleged trust relation of the bank to the plaintiff. We have carefully examined all of the evidence bearing upon this question and are satisfied that the finding could not have been other than it was. Three reputable witnesses testified to the fact that the lease was for the benefit of said Meade and two other persons associated with him and that the bank had no interest therein. The testimony of these witnesses was strongly confirmed by entries upon the books of the bank which were made soon after the execution of the lease, and were entirely consistent with the claim that it was for the benefit of these individuals and inconsistent with the claim that it was for the benefit of the bank itself. To meet this strong showing, little or no proof was offered on the part of the

plaintiff; even his own testimony failed to show that it was agreed that the lease should be for the benefit of the bank, on the contrary, it tended to show that it was to be for the benefit of Meade and the two persons associated with him. He testified that he was told that the lease was to be made to one of them, and that he himself selected Meade to be named as lessee. This was all that tended to show that the bank was interested in the lease except some loose statements by some of its officers to persons having no interest in the transaction and they were entirely insufficient to have established the claim of the plaintiff, even if there had been no testimony upon the part of the defendant tending to show a contrary state of facts.

There was a claim made that plaintiff should have received one-third instead of one-fourth of the hop crop, but the lease having been made upon the basis of one-fourth and not one-third, this claim must fall for the reason that the contract was freely entered into by the appellant and his wife without any such advantage having been taken of them as would enable them to avoid any of its conditions. The bank did all that could be required, if, when it received from the lessee one-fourth of the proceeds of the hop crop, it applied it in payment of the obligations of the plaintiff in the order required by law. But it is claimed that such proceeds should have been applied first to the payment of the note and mortgage, and that if they had been said note and mortgage would have been fully paid and satisfied. It may be conceded that they should have been so applied if there had been no direction by the plaintiff as to their application, but the trial court, upon abundant proof, found that it was agreed between the bank and the plaintiff that the proceeds of the hops should be applied first to re-

pay the bank the amounts which it had advanced to pay the Meeker mortgage, and the interest on the real estate mortgages; and no reason was shown to exist why such agreement was not in full force. There was a claim that the bank had not accounted for the amount collected on a certain note turned over to it by the plaintiff, but it was clearly shown by the testimony of the cashier of the bank that the money so collected had been duly accounted for and this was in no manner contradicted by the testimony of the plaintiff. The claim that there should have been a deduction from the amount due upon the note on account of the leased premises not having been left in the condition required by the terms of the lease, is determined by what we have said as to the finding that the bank was not interested in the lease.

All of the findings of fact made by the trial court were abundantly supported by the proofs and the law of the case depending upon such facts was correctly determined.

The judgment and decree will be in all things affirmed.

DUNBAR, ANDERS, SCOTT and GORDON, JJ., concur.